### THOMAS WILLIAMS *vs.* INHABITANTS OF THE COUNTY OF MIDDLESEX.

The repeal of the law, which directed that the surplus proceeds of the labor of convicts in houses of correction should be paid to them on their discharge, took away the authority to pay the proceeds of labor done before the repeal, to those who were not discharged until after the repeal.

ASSUMPSIT to recover for work and labor alleged to have been performed for the defendants, between June 16th, 1838, and May 9th, 1839.

The facts of the case, as agreed by the parties, were these . The plaintiff was convicted of larceny, at the June term 1838, of the court of common pleas in Middlesex, and was sentenced to be confined to hard labor for the term of two years in the house of correction in Cambridge. While confined under his sentence, he was put to hard labor, in making the doors, locks and other iron work necessary for the completion of a new house of correction, which the county commissioners were then building. This was done in pursuance of the rules established for the government of the house to which the plaintiff was sentenced, and of an agreement between the overseers thereof and the said commissioners.

The proceeds of the plaintiff's labor, from the time of his commitment to the 9th of May 1839, and from that day to the time of his discharge on the 16th of June 1840, were more than sufficient to pay the costs of the materials furnished to him, and for his maintenance in said house, with all other charges attending his confinement. The tools, materials, and other things required for the employment and safe keeping of the plaintiff,

were provided by said overseers at the expense of the defend-ants ; but neither said overseers nor the master of said house ever made up any account of the proceeds of the plaintiff's labor or earnings, nor was any thing ever paid, on account thereof, into the treasury of the defendants. Nor did the county com-missioners ever direct or request said master or overseer to keep or make up any such account, or to pay to the defendants any sum or surplus of the plaintiff's said earnings.

The plaintiff, before he commenced this action, made a de mand, in writing, on the county commissioners, the county treasurer, and the overseers of the house of correction, to pay to him the net amount of his said earnings, over and above the cost of his support, confinement and employment, and the use of tools ; but nothing has been paid to him, nor to the use of his family.

The parties agreed that if the plaintiff was entitled to recover, his damages should be assessed by a referee, and that he should have judgment therefor ; otherwise, that he should become non-suit.

*H. H. Fuller,* for the plaintiff. This action is founded on § 26 of *c.* 143, of the Rev. Sts. by which the plaintiff was entitled, on his discharge from the house of correction, to the surplus proceeds of his labor, up to the 9th of May 1839, the day when the repeal of this section *took effect* under *St.* 1839, *c.* 146, § 1. The repeal could not affect the right of the plain-tiff to his previous earnings. 2 Dwarris on Sts. 680, 689, 690. *Dash* v. *Van Kleeck,* 7 Johns. 502. *Couch* v. *Jeffries,* 4 Bur. 2460. *The People* v. *Livingston,* 6 Wend. 526. *Lewis* v. *Brackenridge,* 1 Blackf. 220.

*Buttrick,* for the defendants, cited *Commonwealth* v. *Bird,* 12 Mass. 443. *Rutland* v. *Mendon,* 1 Pick. 154. *Walter* v. *Bacon,* 8 Mass. 468. *Hewitt* v. *Wilcox,* 1 Met. 154. *Bigelow* v. *Pritchard,* 21 Pick. 175. *Hollingsworth* v. *Virginia,* 3 Dall. 378. *Dale* v. *Governor,* 3 Stew. 387. If *St.* 1839, *c.* 146, has not taken away the plaintiff's claim, yet he cannot maintain this action against the defendants. His remedy, if any, is by a writ of mandamus.

*\**

DEWEY, J. The plaintiff's claim is certainly novel in its character, and can be sustained, if at all, only by the positive provisions of law. That any statute should have provided, that convicts — who are in the service of the public in no other manner than in the execution of the sentence of the law, which the courts have awarded against them as the due punishment for their crimes — may sustain actions at law against the inhabitants of the county where the house of correction is situated to which they may have been sentenced, to recover as upon a *quantum meruit* for the value of their services as laborers, during the period of their sentence to hard labor, would seem at least highly improbable.

The case is put for the plaintiff, on Rev. Sts. *c.* 143, § 26, wherein it is enacted, that " when the term for which any prisoner has been sentenced expires, or he is otherwise discharged, if it shall appear that the proceeds of his labor are more than · sufficient to pay the costs of the materials furnished to him, and for his maintenance in the jail or house of correction, with all other charges attending his confinement and employment, the residue shall be paid over to him, for his own use." This provision was in force at the time of the conviction and sentence of the plaintiff, although it was subsequently repealed during the period of his sentence and before he was discharged. *St.* 1839, *c.* 146, § 1.

Upon the provisions of the revised statutes first above cited, the plaintiff seeks to raise a promise, or to lay the foundation for a legal liability, on the part of the defendants, to pay to him the proceeds of his labor, beyond what was expended for his maintenance in the house of correction. But we cannot sustain the views of the counsel for the plaintiff; not being satisfied that the _egislature intended to create the relation of debtor and creditor between the prisoners confined to hard labor in the house of correction and the inhabitants of the county in which such pris ners should be confined in the execution of their sentences. On the contrary, we think that this provision for payment to the convict was intended to be in the nature of a gratuity, to be paid for services which he was required to perform in execution of his

sentence, independent of any such allowance in money. This provision was, we think, introduced into the statute, as part of a system for the better regulation and discipline of houses of correction, and one, which it was supposed would tend to advance the usefulness of this mode of punishment. It stands much upon the same footing as the statute provisions regulating the diet, clothing, &c., which the statutes require to be furnished to the prisoners ; Rev. Sts. *c.* 144, §§ 46, 47, *c.* 143, § 40 ; which provisions, however imperative on those charged with the administration of the police of the prison or house of correction, surely furnish no grounds for sustaining an action at law in favor of the prisoners.

This particular provision as to the payment of money to convicts, for their labor in certain cases, was doubtless adopted as an experiment ; and having, (as we must presume from its early repeal,) failed to secure the beneficial effects, contemplated upon its original enactment, was soon abandoned.

It was urged in behalf of the plaintiff, that his rights are not to be affected by the repealing act of 1839, *c.* 146. We think, however, that it was competent for the legislature to repeal that provision of the statute upon which the plaintiff founds his present claim, as well as any other provisions of the statute connected with the administration of the government and discipline of the house of correction. And as that provision was repealed before the expiration of the term for which the plaintiff was sentenced, and before his discharge, the overseers of the house of correction, and other agents of the county, no longer had authority to make any such payment as might have been authorized, if the statute had remained in force.

Without considering the other objections taken by the defendants, viz. that no account was actually rendered by the master of the house of correction, or settled by the overseers, as to the proceeds of the plaintiff's labor, and no money paid into the county treasury on account thereof ; the court are of opinion, upon the general ground already stated, that there was no such existing liability on the defendants to pay to the plaintiff, at the time of the expiration of his sentence, the amount of his earn-

ings above the expenses incident to his support, as will render them chargeable in this action.

*Plaintiff nonsuit.*